UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**KENNETH DUNCAN,**

**Plaintiff,**

**v.**                                       **Case No. 6:20-cv-1524-CEM-GJK**

**RUSHMORE LOAN**
**MANAGEMENT SERVICES,**
**LLC,**

**Defendant.**

_____/

**ORDER**

THIS CAUSE is before the Court on Defendant's Motion to Dismiss ("Motion," Doc. 49), to which Plaintiff filed a Response in Opposition ("Response," Doc. 54). For the reasons stated herein, the Motion will be granted in part and denied in part.

## I.    BACKGROUND

In 2003, Plaintiff obtained a U.S. Department of Veterans Affairs-backed loan to purchase a residence (the "Property"). (Second Am. Compl. ("SAC"), Doc. 42, at 2). In connection with the loan, a promissory note and mortgage were then recorded against the Property. (*Id.*). By August 2018, Plaintiff "fell behind on his loan

payments, which caused the loan to go into default."[1] (*Id.* at 5). After default, Defendant "took over servicing of the loan." (*Id.*).

As part of the loan being in default, Defendant ordered inspections of the Property to be conducted monthly, charging twenty-five dollars per inspection, which was added to Plaintiff's loan. (*Id.* at 4–6). Plaintiff alleges that Defendant has charged this amount monthly despite not actually incurring the full $25 amount for each inspection. (*Id.* at 6). Eventually, the loan went into foreclosure. (Apr. 2020 Emails, Doc. 42-2, at 3–4 (indicating that the foreclosure trial was scheduled for late-June 2020)).

In April 2020, pursuant to the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. No. 116-136, 134 Stat. 281 (2020), Plaintiff requested a 180-day forbearance of his loan payments. (Doc. 42 at 6; Apr. 3, 2020 Forbearance Request Email, Doc. 42-3, at 2). Initially, Defendant approved the requested forbearance for a shorter period of three months. (Doc. 42 at 6 (indicating approval for ninety days); Apr. 16, 2020 Forbearance Letter, Doc. 42-4, at 1 (indicating approval for three months)).

---

[1] Plaintiff does not specify in the SAC when the loan went into default. (Doc. 42 at 5). However, exhibits attached to the SAC indicate that Plaintiff was past due on his loan payments beginning on August 1, 2018. (Apr. 16, 2020 Forbearance Letter, Doc. 42-4, at 2; Sept. 1, 2020 Mortgage Statement, Doc. 42-5, at 3).

Plaintiff alleges that during the forbearance period, Defendant continued charging Plaintiff for property inspections, in violation of the CARES Act. (Doc. 42 at 6). Defendant also allegedly continued to send mortgage statements to Plaintiff during this time, which stated that late fees would be charged if payment was not made by a specified date and included the total amount due on the loan to avoid foreclosure. (*Id.* at 7).

Plaintiff filed this suit in August 2020, (Compl., Doc. 1, at 17), and alleges five claims in the SAC—two counts for violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e *et seq.*; one count for violation of the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. § 559.551 *et seq.*; one count for breach of contract; and one count for constructive fraud. (Doc. 42 at 14–19). Plaintiff brings each of these counts as class claims. (*Id.* at 12–19). Defendant moves for dismissal of all claims on a number of bases. (*See generally* Doc. 49).

## II.    ARTICLE III STANDING

Defendant first argues that Plaintiff lacks standing. Article III standing is a threshold inquiry, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998), so the Court addresses it first.

A.      **Legal Standard**

In the Eleventh Circuit, "[a] motion to dismiss for lack of standing is properly brought under Federal Rule of Civil Procedure 12(b)(1)." *Radenhausen v. USCG*, No. 3:13-cv-268-J-39JRK, 2014 U.S. Dist. LEXIS 198128, at *10 (M.D. Fla. Feb. 13, 2014) (citing *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1242 (11th Cir. 2003)); *Parrales v. Dudek*, No. 4:15cv424-RH/CAS, 2015 U.S. Dist. LEXIS 189205, at *11 (N.D. Fla. Dec. 24, 2015). Pursuant to Rule 12(b)(1), a party may move to dismiss the claims against it for "lack of subject-matter jurisdiction." "Attacks on subject matter jurisdiction . . . come in two forms: 'facial attacks' and 'factual attacks.'" *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1260–61 (11th Cir. 1997) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990)). "Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint, and the district court takes the allegations as true in deciding whether to grant the motion." *Morrison v. Amway Corp.*, 323 F.3d 920, 925 n.5 (11th Cir. 2003). However, where a defendant raises a factual attack, "the district court may consider extrinsic evidence such as deposition testimony and affidavits." *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009). "When jurisdiction is properly challenged, a plaintiff has the burden of showing jurisdiction exists." *Kruse, Inc. v. Aqua Sun Invs., Inc.*, No. 6:07-cv-1367-Orl-19UAM, 2008 U.S. Dist. LEXIS 7066 (M.D. Fla. Jan. 31, 2008).

**B.     Analysis**

In order to bring a case in federal court, a plaintiff must establish standing under Article III of the United States Constitution. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–60 (1992). To establish Constitutional, or Article III, standing, a plaintiff must show: (1) "that he has suffered an 'injury-in-fact'"; (2) "a causal connection between the asserted injury-in-fact and the challenged action of the defendant"; and (3) "that 'the injury will be redressed by a favorable decision.'" *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001) (quoting *Lujan*, 504 U.S. at 560–61).

Here, Defendant argues that Plaintiff lacks standing because he has not satisfied the first element of standing, an injury in fact. An injury in fact under Article III is "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Lujan*, 504 U.S. at 560). The injury must be "particularized," meaning it "must affect the plaintiff in a personal and individual way." *Id.* (quoting *Lujan*, 504 U.S. at 560 n.1). Additionally, the injury must be "concrete," meaning "it must actually exist." *Id.*

Defendant's standing argument relies primarily on the legal authority in *Trichell v. Midland Credit Management*, 964 F.3d 990 (11th Cir. 2020). In *Trichell*, the Eleventh Circuit vacated district court judgments and remanded the case with

instructions to dismiss two FDCPA cases for lack of standing, finding that two consumers who had received allegedly misleading debt collection letters—but were not actually deceived by the letters—did not suffer an injury in fact. *Id.* at 1005.

Defendant argues that this case is like *Trichell* because Plaintiff "never alleges he paid, was at risk of paying, or even considered paying" the property inspection charges. (Doc. 49 at 7). Additionally, Defendant contends that the mortgage statement—the alleged debt collection attempt—was sent to Plaintiff's attorney, and Plaintiff does not allege that he received a copy. Finally, as to the purported shortened CARES Act forbearance period, Defendant argues that Plaintiff does not allege that initially being denied the full 180-day forbearance resulted in any injury because the forbearance was extended to the full 180 days before the expiration of the initial forbearance. (*See* July 13, 2020 Letter, Doc. 49-1, at 61 (extending the CARES Act forbearance for an additional three months)). The first two arguments are facial attacks—based solely on the allegations in the SAC and attached exhibits—while the last argument is a factual attack, based on evidence outside the SAC.

Upon review of the SAC, Plaintiff does allege that he was "at imminent risk" of paying the property inspection fees, which negates Defendant's first two arguments. (Doc. 42 ¶ 63). This is distinct from the facts in *Trichell*, where neither of the plaintiffs alleged that they were misled by the debt collection letters, 964 F.3d

at 994, because here a reasonable inference from Plaintiff's allegation that he was at risk of having to pay the fees is that he was misled by the mortgage statements. While the standing inquiry requires a plaintiff to demonstrate standing as to each claim he raises, *Mack v. USAA Cas. Ins. Co.*, 994 F.3d 1353, 1356 (11th Cir. 2021) (citing *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008)), all of Plaintiff's claims here are premised, at least in part, on the property inspection fees, so he has demonstrated standing as to all of the claims, and the Court need not decide whether Defendant's initial shortening of the forbearance period caused an additional injury.

## III.   RULE 12(b)(6) MOTION

Defendants' remaining arguments are properly considered under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

### A.   Legal Standard

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." In determining whether to dismiss under Rule 12(b)(6), a court accepts the factual allegations in the complaint as true and construes them in a light most favorable to the non-moving party. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th

Cir. 2009). Nonetheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Furthermore, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Ordinarily, in deciding a motion to dismiss, "[t]he scope of the review must be limited to the four corners of the complaint." *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

## B.    Analysis

### 1.    *Pre-Suit Notice and Reasonable Time to Cure*

Defendant first argues that before Plaintiff can bring suit against Defendant "for claims arising from the mortgage, the mortgage requires [Plaintiff] to provide notice and a 'reasonable period' within which [Defendant] may take 'corrective action,'" (Doc. 49 at 8 (quoting Mortgage, Doc. 42-1, at 17)), and that Plaintiff failed to provide that notice and an opportunity to cure, (*id.* at 9).

As a preliminary matter, Defendant presents to the Court several purported pre-suit communications that were not attached to the SAC. Ordinarily, in deciding a motion to dismiss, "[t]he scope of the review must be limited to the four corners of the complaint." *St. George*, 285 F.3d at 1337. The Court may—in its discretion—look beyond the complaint if the evidence presented is "central to the plaintiff's claim, and . . . its authenticity is not challenged," *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010) (citing *United States ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 811 (11th Cir. 2015)), if "documents [are] incorporated into the complaint by reference," *Lozman v. City of Riviera Beach*, 713 F.3d 1066, 1075 n.9 (11th Cir. 2013), or if there are "matters of which a court may take judicial notice," *id.*

Defendant contends, summarily in a footnote, that the Court may consider these communications at the motion to dismiss stage because "the allegations of notice and failure to cure are made within the complaint, are central to [Plaintiff]'s claim, and the content of the documents are undisputed." (*Id.* at 5 n.4). And, if the Court declines to consider the communications for the purposes of the motion to dismiss, Defendant "requests the Court convert this motion to one seeking summary judgment on the notice issue." (*Id.*).

First, a footnote[2] is not a proper place to raise arguments in a motion. *Bodywell Nutrition, Ltd. Liab. Co. v. Fortress Sys., Ltd. Liab. Co.*, 846 F. Supp. 2d 1317, 1325 n.6 (S.D. Fla. 2011) (refusing to address arguments that were summarily raised in a footnote); *Brady v. Medtronic, Inc.*, No. 13-cv-62199-RNS, 2014 WL 1377830, at *8 n.1 (S.D. Fla. Apr. 8, 2014) (same). If Defendant felt it was important for the Court to consider these documents, the argument to consider them should have been raised in the body of the motion. Second, Defendant has not explained why these documents are central to Plaintiff's claims. For these reasons, the Court will—in its discretion—decline to consider these documents at this stage. *Jones v. Auto. Ins. Co.*, 917 F.2d 1528, 1531–32 (11th Cir. 1990) ("It is within the judge's discretion to decide whether to consider matters outside of the pleadings that are presented to the court." (citing *Prop. Mgmt. & Inv., Inc. v. Lewis*, 752 F.2d 599, 604 (11th Cir.1985)).

As to Defendant's request to convert the Motion to a motion for summary judgment, again, Defendant includes this argument in a footnote, with no citation to legal authority explaining why this would be proper at such an early stage in the litigation with an undeveloped record. *U.S. Steel Corp. v. Astrue*, 495 F.3d 1272, 1287 n.13 (11th Cir. 2007) (refusing to address a "perfunctory and underdeveloped argument" with no citation to legal authority and collecting cases); *see also Jones v.*

---

[2] Here and throughout the Motion, Defendant, in what the Court might cynically view as an attempt to subvert the page limitation, drops large portions of text in footnotes. *See* M.D. Fla. R. 3.01(a).

*City of Columbus*, 120 F.3d 248, 253 (11th Cir. 1997) ("The law in this circuit is clear: the party opposing a motion for summary judgment should be permitted an adequate opportunity to complete discovery prior to consideration of the motion."); *Pac. Tech Constr., Inc. v. Sauer, Inc.*, No. 3:18-cv-170-J-34JRK, 2018 U.S. Dist. LEXIS 151082, at *13 (M.D. Fla. July 16, 2018) (declining to convert a motion to dismiss to one for summary judgment "[g]iven the early posture of th[e] case and the factual nature of [the] arguments" and collecting cases). Therefore, the Court will decline to do so.

Reaching the substance of Defendant's argument regarding pre-suit notice, Defendant's arguments are based entirely on the contention that Plaintiff "falsely claims he gave pre-suit notice and a reasonable period of time for Defendant to act." (Doc. 49 at 9 (citing Doc. 42 ¶¶ 64–65)). However, at this stage, the Court must take the allegations in the SAC as true. Those allegations state that "Plaintiff . . . sent letters offering Defendant an opportunity to cure its violations of state and federal law"; "[a]fter a reasonable amount of time, the Plaintiff filed this lawsuit because Defendant did not cure the breach of its violations of state and federal law"; and "[a]s a result, all conditions precedent to the filing of this class action lawsuit have occurred or otherwise been waived." (Doc. 42 ¶ 64–66). These are sufficient allegations at the pleading stage. Fed. R. Civ. P. 9(c) ("In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred

or been performed."). Accordingly, Defendant's Motion will be denied as to the pre-suit notice argument.

### 2.   *CARES Act*

Defendant next argues "that the CARES Act does not create a private right of action," and therefore, the claims premised on alleged CARES Act violations are an improper attempt at "bootstrapping."  (Doc. 49 at 12). This argument is based upon a presumption that the CARES Act does not provide for a private right of action, an argument which Defendant asserts entirely in a footnote. Plaintiff argues that Defendant has waived this argument by burying it in a footnote. The Court agrees. "A footnote is the wrong place for substantive arguments on the merits of a motion." *Brady*, 2014 WL 1377830, at *8 n.1 (quotation omitted); *Keister v. Bell*, 879 F.3d 1282, 1291 n.2 (11th Cir. 2018) (noting that "substantive argument[s]" raised only in a footnote are "waived"); *Bodywell Nutrition*, 846 F. Supp. 2d at 1325 n.6. And because Defendant's argument on this issue is premised entirely on the presumption that the CARES Act does not permit a private right of action—an argument Defendant has waived at the motion to dismiss stage—the remainder of the argument necessarily fails.

### 3.   *Property Inspection Fees*

Next, Defendant argues that Plaintiff has not plausibly alleged that the full cost of the property inspection fees charged by Defendant has not actually been

incurred because Plaintiff asserts these allegations only upon "information and belief." (Doc. 49 at 13). Defendant frames this argument both in terms of Federal Rule of Civil Procedure 8(a) pleading standards and Rule 9(b) heightened pleading standards. The Court first looks to the basic pleading standard set forth in Rule 8(a).

Rule 8(a) requires only that "[a] pleading . . . must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). And when considering a Rule 12(b)(6) motion, the Court takes the allegations in a complaint as true. *United Techs.*, 556 F.3d at 1269. However, "conclusory allegation[s]" asserted only upon "information and belief" need not be taken as true. *Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013) (citing *Twombly*, 550 U.S. at 551 (2007)).

Here, while Plaintiff's allegation that the "actual cost for each property inspection is significantly less than the $25.00 [Defendant] charges and collects from consumers" is alleged "[u]pon information and belief," the preceding allegations make clear that this statement is more than a conclusion. (Doc. 42 ¶ 18). That is, Plaintiff asserts that Defendant "has unilaterally contracted with an Inspection Vendor that performs the property inspections on [Defendant]'s behalf" and that "[t]he Inspection Vendor Contract lists the actual cost to Rushmore for each property inspection." (*Id.* ¶¶ 16–17). Then Plaintiff asserts that based on these facts, he believes that the inspection fee charged to Plaintiff exceeds the cost incurred by

Defendant. (*Id.* ¶ 18). The supporting allegations are sufficient at this stage to raise a plausible belief that Plaintiff's allegation upon information and belief is more than a mere conclusory statement. *Diamond v. Owens*, 131 F. Supp. 3d 1346, 1385 n.7 (M.D. Ga. 2015) (noting that when "information and belief allegations are buttressed by specific facts and otherwise supported by inferences derived from other well-pled allegations," the upon information and belief allegations are made plausible); *Culver v. Phh Mortg. Corp.*, No. 6:20-cv-2292-PGB-EJK, 2021 U.S. Dist. LEXIS 122806, at *8–9 (M.D. Fla. June 28, 2021) (citing *Twombly*, 550 U.S. at 556; *Iqbal*, 556 U.S. at 679).

Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake[, but m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Defendant argues summarily that Plaintiff's claims sound in fraud, and therefore Rule 9(b)'s heightened pleading standard applies. Whereas Plaintiff argues that Rule 9(b) does not apply because his claims are for constructive fraud and not fraud.

The Court declines to decide whether Rule 9(b) applies to the claims in this case because assuming *arguendo* that Rule 9(b) does apply, Plaintiff has satisfied that standard. "The purpose of Rule 9(b) is to 'alert[] defendants to the precise misconduct with which they are charged and protect[] defendants against spurious charges . . . .'" *Klusmeier v. Bell Constructors, Inc.*, 469 F. App'x 718, 720 (11th

Cir. 2012) (quoting *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)). Defendants are clearly on notice of the precise alleged misconduct regarding the property inspection fees—that Defendant charged more than the cost incurred for the property inspection fees and improperly charged inspection fees during the CARES Act forbearance period. (*See also* Doc. 42 ¶ 25–49; Mortgage Statement, Doc. 42-5, at 3) (showing the date and amount of each inspection fee charged to Plaintiff's loan)).

### 4.   *FDCPA and FCCPA Claims*

Plaintiff alleges that Defendant violated various subsections of § 1692e and §1692f of the FDCPA and as well as section 559.72(9) of the FCCPA. (Doc. 42 at 15–17). The FDCPA prohibits "[a] debt collector" from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Violations of § 1692e include, *inter alia*, "[t]he false representation of . . . the character, amount, or legal status of any debt; or . . . any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt," *id.* § 1692e(2)(A)–(B), or "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken," *id.* § 1692e(5). Additionally, "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt," *id.* § 1692f, including "[t]he collection of any amount (including any interest, fee, charge, or expense incidental

to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law," *id.* § 1692f(1).

"[T]he FCCPA, Florida's analogue to the federal FDCPA, contains substantially similar provisions and courts often analyze them together for that reason." *Alhassid v. Nationstar Mortg. LLC*, 771 F. App'x 965, 969 (11th Cir. 2019) (discussing the differences between the two statutes, which are not relevant to the analysis here) (citing *Oppenheim v. I.C. Sys., Inc.*, 627 F.3d 833, 839 (11th Cir. 2010). "The FCCPA expressly provides that 'due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to the federal [FDCPA]' when construing the Act." *Id.* (quoting Fla. Stat. § 559.77(5)).

A prima facie case under the FDCPA requires a plaintiff to allege that "(1) the defendant is a debt collector; (2) the defendant engaged in an act or omission prohibited by the FDCPA; and (3) the challenged conduct is related to debt collection." *Owens-Benniefield v. BSI Fin. Servs.*, 806 F. App'x 853, 856 (11th Cir. 2020) (citing *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1216–17 (11th Cir. 2012)). The Eleventh Circuit has "adopted a 'least-sophisticated consumer' standard to evaluate . . . a debt collector's conduct . . . under the [FDCPA]." *Crawford v. LVNV Funding, LLC*, 758 F.3d 1254, 1258 (11th Cir. 2014) (citing *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1193–94 (11th Cir.

2010)). "The inquiry is not whether the particular plaintiff-consumer was deceived or misled; instead, the question is 'whether the least sophisticated consumer would have been deceived' by the debt collector's conduct." *Id.* (quoting *Jeter v. Credit Bureau*, 760 F.2d 1168, 1180 n.11 (11th Cir. 1985) (internal quotations omitted)).

Defendant argues that Plaintiff "has not plausibly alleged any debt collection attempt," so "the FDCPA and FCCPA claims should be dismissed. (Doc. 49 at 17). Specifically, Defendant contends that "[t]he only asserted debt collection attempt . . . is a periodic mortgage statement." (*Id.* at 15 (citing Doc. 42 ¶¶ 38–39)). And, Defendant argues, the mortgage statement was sent only to comply with the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, so it cannot be construed as a debt collection attempt.

Plaintiff's Response does not directly dispute that the mortgage statement was the only purported debt collection attempt.[3] Rather, Plaintiff argues that the mortgage statement serves as "evidence of" Defendant's "violative conduct" of "charging illegal property inspection fees." (Doc. 54 at 15). Plaintiff cites a Southern District of Florida case in support of his argument, *Manrique v. Wells Fargo Bank N.A.*, 116 F. Supp. 3d 1320 (S.D. Fla. 2015). In *Manrique*, the Court cited the

---

[3] The SAC alleges that "[Defendant] has demanded [Plaintiff] pay the property inspection fees in monthly mortgage statements and reinstatement letters." (Doc. 42 at 7). However, only a single copy of a mortgage statement is attached to the SAC. (*See generally* Doc. 42-5). Because the mortgage statement is sufficient here, the Court need not consider the additional allegation of reinstatement letters.

Eleventh Circuit case *Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291 (11th Cir. 2015), and explained that Defendants' "conduct" of "labeling . . . property inspection fees as 'MISC THIRD PARTY RECOVERABLE Billed'" on a mortgage statement "constitute[d] a 'false representation and deceptive means to collect a debt.'" *Manrique*, 116 F. Supp. 3d at 1325 (citations omitted). The Court agrees that *Manrique* stands are the proposition that an FDCPA claim need not be premised upon a "communication." *See* 15 U.S.C. § 1692e (prohibiting "[a] debt collector" from using "any false, deceptive, or misleading *representation* or *means*" (emphasis added)). However, the "representation or means" must still be "in connection with the collection of any debt." *Id.* Therefore, the Court must still look to the mortgage statement to determine whether Plaintiff sufficiently alleges that Defendant attempted to collect a debt in violation of the FDCPA. And indeed, this is also the course of action that the court took in *Manrique*. *Id.* at 1325–26.

Looking to the mortgage statement, "TILA requires lenders to send mortgage statements that contain certain information, 'for each billing cycle at the end of which there is an outstanding balance in that account or with respect to which a finance charge is imposed.'" *Green v. Specialized Loan Servicing LLC*, 766 F. App'x 777, 784 (11th Cir. 2019) (quoting 15 U.S.C. § 1637(b); 12 C.F.R. § 1026.41). In *Green*, the Eleventh Circuit held that a mortgage statement containing no more

information "beyond what is required by TILA" is not a debt collection attempt under the FDCPA. *Id.*

Here, oddly, Plaintiff focuses on the standard TILA-required facets of the mortgage statement and cites numerous district court cases prior to *Green*. District court cases decided prior to an on-point Eleventh Circuit case are not be helpful to the Court's analysis. Additionally, Plaintiff appears to completely miss the most obvious language from the mortgage statement. It expressly states that Defendant "is a Debt Collector, who is attempting to collect a debt," (Doc. 42-5 at 2), "[y]ou are late on your mortgage payments," (*id.* at 3), and "[f]ailure to bring your loan current may result in fees and foreclosure – the loss of your home," (*id.*). The statement also includes charges labeled as "VALUE/HOA/INSP COST" on the following dates—two charges on April 10th and one charge each on April 15th, May 7th, June 3rd, July 7th, and August 7th. (*Id.*). The charges on May 7th, June 3rd, and July 7th occurred during the time period of the initial three-month CARES Act forbearance granted to Plaintiff by Defendant. (*See* Doc. 42-4 at 2–3). And, the statement provides that "[y]ou must pay this amount $37,487.00 to reinstate your loan," and that total presumably includes the cost of the inspection fees. (Doc. 42-5 at 3). Taken together, these statements can certainly be read as a debt collection attempt.

Alternatively, Defendant argues that the mortgage statement cannot constitute a debt collection attempt because it was mailed to Plaintiff's counsel in his foreclosure case rather than to Plaintiff himself. (Doc. 49 at 16). However, "a debt collector's communications with a consumer's attorney, . . . are subject to §§ 1692d-1692f of the [FDCPA] to the same extent as a debt collector's communications with the consumer himself." *Miljkovic*, 791 F.3d at 1302–03 (11th Cir. 2015) (citing 15 U.S.C. § 1692k(a)). "It would create an odd situation, indeed, if the fact that a consumer was represented by an attorney somehow excused the debt collector from otherwise observing the FDCPA's requirements." *Id.* at 1303; *see also Jeter v. Credit Bureau*, 760 F.2d 1168, 1180 n.11 (11th Cir. 1985) (hiring an attorney does not factor into the question of whether the least sophisticated consumer would have been deceived by a debt collection attempt).

Accordingly, assuming *arguendo* at this stage that FDCPA and FCCPA claims can be premised on an alleged violation of the CARES Act—a question which the Court does not reach—and taking the allegations in the SAC as true combined with the language in the mortgage statement, Plaintiff has alleged a prima facie case under the FDCPA and FCCPA. *Reese*, 678 F.3d 1211, 1216–17.

     *5.*    *Breach of Contract Claim*

In Count IV, Plaintiff alleges a breach of contract claim as to the mortgage. (Doc. 42 at 17–18). A breach of contract claim under Florida law[4] consists of the following elements: "(1) a valid contract; (2) a material breach; and (3) damages." *Homes & Land Affiliates, LLC v. Homes & Loans Mag., LLC*, 598 F. Supp. 2d 1248, 1268 (M.D. Fla. 2009) (citing *Abbott Labs., Inc. v. Gen. Elec. Cap.*, 765 So. 2d 737, 740 (Fla. 5th DCA 2000)). Defendant argues that Plaintiff has failed to state a claim for breach of contract because he has not pleaded a material breach or actual damages.

In the SAC, Plaintiff cites to several provisions of the mortgage in connection with his breach of contract claim. First, Plaintiff cites "Definition (H)," which defines the term "Applicable Law," to "mean[] all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions." ("Definition (H)," Doc. 42-1 at 6). The other provisions cited by Plaintiff in the SAC set forth actions that can be taken by the lender. Those provisions are as follows: "Lender or its agent may make reasonable entries upon and inspections of the Property," ("Paragraph 7," *id.* at 12); "Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under

---

[4] The Property is located in Florida, (Doc. 42 at 2), and the parties do not presently dispute that Florida law applies to this case.

this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property," ("Paragraph 9," *id.*); "Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees," ("Paragraph 14," *id.* at 15); and "Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section . . . , including, but not limited to, reasonable attorneys' fees and costs of title evidence," ("Paragraph 22," *id.* at 18). Plaintiff alleges that Defendant breached the above mortgage provisions "by charging [Defendant] . . . unfair, deceptive, and unreasonable property inspection fees" and "by unilaterally reducing the forbearance periods to which [Defendant] . . . w[as] entitled under the CARES Act." (Doc. 42 ¶¶ 118–19).

On its face, it is not clear from the SAC which provision of the mortgage Defendant is alleged to have breached or how Defendant's alleged breach is even related to the cited provisions. Definition (H) is an informational definition that merely defines what laws apply to the mortgage; it does not impose a duty or a limitation on Defendant. Paragraph 7 allows Defendant to conduct inspections of the Property. Paragraphs 9 and 14 expressly allow for costs to be incurred by Defendant and fees charged to Plaintiff in connection with protecting the Property. And

Paragraph 22 permits Defendant to collect those expenses incurred. None of the actions allegedly taken by Defendant are contrary to these provisions.

Plaintiff argues that the CARES Act falls under Definition (H) for Applicable Law and that alleging a violation of the CARES Act necessarily alleges a breach of the mortgage. This argument, which assumes that the CARES Act falls under Definition (H)—a question the Court does not reach—still fails to connect the alleged violation of Applicable Law to a provision of the mortgage that has been breached. Plaintiff's allegations in this portion of the SAC amount to an alleged violation of the CARES Act but not an alleged breach of the mortgage.[5]

Plaintiff also appears to argue that it was somehow an inherent breach of the mortgage for Defendant to charge an allegedly greater fee for the property inspections than was actually incurred. In support, Plaintiff cites a case from the Southern District of Florida, *Wilson v. Everbank, N.A.*, 77 F. Supp. 3d 1202 (S.D. Fla. 2015). In *Wilson*, the plaintiffs alleged that the defendant purchased "force-placed" insurance coverage on a property and passed on the cost of that insurance to the borrowers, an action that was permitted by the mortgages at issue. *Id.* at 1217.

---

[5] As Defendant points out in the Motion, (Doc. 49 at 18–19), the mortgage does contain a provision prohibiting "Lender" from "charg[ing] fees that are expressly prohibited by this Security Instrument or by Applicable Law," (Doc. 42-1 at 15). But this does not appear to be a provision relied on by Plaintiff because Plaintiff does not address it in his Response. Moreover, the SAC does not allege a violation of this provision. *Brandywine Commc'ns Tech., LLC v. T-Mobile USA, Inc.*, 904 F. Supp. 2d 1260, 1272 n.13 (M.D. Fla. 2012) ("Plaintiff cannot add facts bolstering its allegations within its Response to a Motion to Dismiss that are not contained in its Complaint").

However, the plaintiffs also alleged that the defendant passed on "costs beyond the cost of coverage," which "were not reasonably related to [the defendant]'s loan servicing," such as "unearned commissions that in actuality represent[ed] amounts kicked back from the insurers to [the defendant]." *Id.* The Southern District Court then denied the defendant's motion to dismiss, finding that those actions properly alleged a material breach" *Id.* Ultimately, the *Wilson* Court's decision was based on the terms of the specific mortgage before it rather than a determination that there is some inherent duty within a mortgage agreement regardless of its terms. *See id.* (explaining that the plaintiff's breach of contract claim would not be dismissed because the plaintiff had sufficiently alleged that the additional charges "were not permitted under their mortgage agreements."). Thus, as with any breach of contract analysis, this Court must examine the terms of the contracts at issue to determine whether there was a breach.

Here, the mortgage expressly permits Defendant to conduct property inspections and charge for and recover the costs of those inspections. The mortgage is silent as to whether there can be some sort of markup on the fees for the inspections. Absent such, the Court cannot infer a breach of the mortgage given the current allegations, especially given the broad language in the mortgage. (*See* Doc. 42-1 at 12 ("Lender may do and pay for whatever is reasonable or appropriate."), 15 ("Lender may charge Borrower fees for services performed in connection with

Borrower's default."), 15 ("In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee."), 18 ("Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided.")). Therefore, the Motion will be granted as to the breach of contract claim. *Montoya*, 2014 U.S. Dist. LEXIS 119464, at *29–30.

### 6. *Constructive Fraud Claim*

In Count V, Plaintiff alleges a claim for construction fraud. (Doc. 42 at 19). "Under Florida law, constructive fraud occurs 'when a duty under a confidential or fiduciary relationship has been abused or where an unconscionable advantage has been taken.'" *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1179 (M.D. Fla. 2005) (quoting *Levy v. Levy*, 862 So. 2d 48, 53 (Fla. 3d DCA 2003)); *Taylor v. Kenco Chem. & Mfg. Corp.*, 465 So. 2d 581, 589 (Fla. 1st DCA 1985).

### a.   Fiduciary Relationship

Defendant first argues that no fiduciary relationship can be alleged between Plaintiff and Defendant because, as a matter of law, no fiduciary relationship exists between a lender or loan servicer and a borrower. (Doc. 49 at 23 (citing *Hogan v. Praetorian Ins. Co.*, No. 1:17-cv-21853, 2018 WL 8266803, at *10 (S.D. Fla. Jan. 11, 2018); *McCulloch v. PNC Bank*, 298 F.3d 1217, 1226 n.13 (11th Cir. 2002)).

"As a general matter, there is no presumed fiduciary relationship between a lender and a borrower under the common law." *McCulloch*, 298 F.3d at 1228 n.13 (citing *Carpenter v. Cmty. Bank of Homestead*, 710 So. 2d 65, 66 (Fla. 3d DCA), review denied, 722 So. 2d 192 (1998)). "A fiduciary relationship may arise, however, under special circumstances . . . where the lender 'takes on extra services for a customer, receives any greater economic benefit than from a typical transaction, or exercises extensive control.'" *Bldg. Educ. Corp. v. Ocean Bank*, 982 So. 2d 37, 41 (Fla. 3d DCA 2008) (quoting *Susan Fixel, Inc. v. Rosenthal & Rosenthal, Inc.,* 842 So. 2d 204, 208 (Fla. 3d DCA 2003); *see also Barnett Bank of W. Fla. v. Hooper,* 498 So. 2d 923 (Fla. 1986); *Jaffe v. Bank of Am., N.A.*, 395 F. App'x 583, 590 (11th Cir. 2010) (citing Florida law). "The burden of proving such a fiduciary relationship is on the party asserting it." *Allen v. First Unum Life Ins. Co.*, No. 2:18-cv-69-FtM-99NPM, 2020 U.S. Dist. LEXIS 195902, at *10–11 (M.D. Fla. Oct. 22, 2020) (citing *Orlinsky v. Patraka*, 971 So. 2d 796, 800 (Fla. 3d DCA 2007)).

Before reaching the allegations in this case, the Court mentions one preliminary point. Plaintiff, in his Response, argues that "[g]iven the liberal pleading requirements of Rule 8" paired with Plaintiff's allegations in the SAC, Plaintiff has demonstrated a fiduciary relationship. It is true that "[c]onstructive fraud, unlike actual fraud, does not require a showing of intent or of a misrepresentation or concealment and thus a claim for constructive fraud need only meet the liberal

pleading requirements of Rule 8." *Linville v. Ginn Real Estate Co.*, LLC, 697 F. Supp. 2d 1302, 1309 (M.D. Fla. 2010) (citing *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 958–59 (11th Cir. 2009)). However, "any special circumstances giving rise to a fiduciary duty must be pled with particularity" so as to allow the Court to determine as a matter of law whether such a duty existed. *Heyward v. Wells Fargo Bank*, No. 8:20-cv-572-T-33AAS, 2020 U.S. Dist. LEXIS 257058, at *23 (M.D. Fla. Oct. 6, 2020) (citing *Parker v. Gordon*, 442 So.2d 273, 275 (Fla. 4th DCA 1983)).

Here, Plaintiff alleges that there was a fiduciary relationship because Defendant "unilaterally took on the extra contractual service of ordering and charging for property inspections," (Doc. 42 ¶ 122), "exercised exclusive control on who performed the property inspections and the amount charged for each property inspection," (*id.* ¶ 125), and "overcharge[d]" for the property inspections, resulting in Defendant "receiv[ing] a greater economic benefit than what was contemplated under the mortgage," (*id.* ¶ 130). All of these allegations boil down to a single service—conducting and charging for property inspections. Therefore, the question is whether this action is enough to constitute the "special circumstances" necessarily to create a fiduciary relationship. *Bldg. Educ. Corp.*, 982 So. 2d at 41.

Some district courts have found that actions such as maintaining an escrow account and purchasing force-placed insurance are not "unusual in the context of servicing a home mortgage" and therefore do not rise to the level of special

circumstances necessary to create a fiduciary relationship. *Hogan v. Praetorian Ins. Co.*, No. 1:17-cv-21853-UU, 2018 U.S. Dist. LEXIS 232708, at *27–30 (S.D. Fla. Jan. 10, 2018); *Wilson*, 77 F. Supp. 3d at 1224. Indeed, Florida courts employing the special circumstances standard have required something more than these ordinary actions. *Capital Bank v. MVB, Inc.*, 644 So. 2d 515, 520–21 (Fla. 3d DCA 1994); *Barnett Bank of W. Fla.*, 498 So. 2d 923, 925–26 (Fla. 1986). However, other district courts have found that these same actions can rise to the level of an alleged fiduciary duty. *Edwards v. Green Tree Servicing, LLC*, No. 5:15cv148-MW/GRJ, 2015 U.S. Dist. LEXIS 151377, at *24 (N.D. Fla. Oct. 22, 2015) (finding that Plaintiff adequately alleged special circumstances to create a fiduciary duty when the loan servicer "took on the extra service of paying insurance premiums on a monthly basis out of the escrow account; . . . received an unusually great economic benefit through the kickbacks; and . . . exercised extensive control over the escrow proceeds, and had near-unfettered discretion to choose the force-placed insurance provider"); *Montoya*, 2014 U.S. Dist. LEXIS 119464, at *49–51.

Generally, the action taken here by Defendant of conducting and charging for property inspections, especially when those inspections are expressly contemplated in the mortgage, appears to have all the characteristics of an "ordinary commercial transaction." *Akiki v. Bank of Am., N.A.*, 632 F. App'x 965, 972 (11th Cir. 2015). This is especially true when the actions taken by Defendant were clearly

in the bank's interest and not Plaintiff, the borrower. *Arbitrajes Financieros, S.A. v. Bank of Am., N.A.*, 605 F. App'x 820, 823 (11th Cir. 2015) (noting that a fiduciary relationship can occur where "confidence is reposed by one party and a trust accepted by the other." (quoting *Dale v. Jennings*, 107 So. 175, 179 (Fla. 1925))); *Akiki*, 632 F. App'x at 972 (noting that "a fiduciary relationship could potentially arise in special circumstances 'where the bank knows or has reason to know that the customer is placing trust and confidence in the bank and is relying on the bank so to counsel and inform him.'" (quoting *Building Educ. Corp.*, 982 So. 2d at 41)); *Cap. Bank v. Mvb*, 644 So. 2d 515, 520 (Fla. 3d DCA 1994) (finding that a fiduciary relationship existed when the bank "invited [Plaintiff]'s reliance by urging [Plaintiff] to trust [the bank] and by reassuring [Plaintiff] that he was part of the . . . Bank family" and "foster[ing] Plaintiff]'s perception that the bank was his financial advisor"). However, given that Plaintiff has alleged that Defendant received an extra financial benefit from charging more for the property inspections than the cost incurred, the Court will take the prudential route of allowing this claim to proceed under the special circumstances exception, which potentially created a fiduciary relationship between Plaintiff and Defendant. *Montoya*, 2014 U.S. Dist. LEXIS 119464, at *50 (discussing the difficulty of making the necessary factually intensive findings to determine a fiduciary relationship at the motion to dismiss stage).

<u>b.</u>     <u>Actual Damages</u>

Defendant next argues that Plaintiff's claim for constructive fraud fails because he does not adequately allege actual damages.

"It is fundamental that '[a]ctual damages and the measure thereof are essential as a matter of law in establishing a claim of fraud.'" *Morgan Stanley & Co. v. Coleman (Parent) Holdings Inc.*, 955 So. 2d 1124, 1132 (Fla. 4th DCA 2007) (quoting *Nat'l Equip. Rental, Ltd. v. Little Italy Rest. & Delicatessen, Inc.*, 362 So. 2d 338, 339 (Fla. 4th DCA 1978)); *Casey v. Welch*, 50 So. 2d 124, 125 (Fla. 1951) ("Damage is of the very essence of an action for fraud or deceit."); *Laney v. Am. Equity Inv. Life Ins. Co.*, 243 F. Supp. 2d 1347, 1353 (M.D. Fla. 2003) ("[U]nder Florida law a Plaintiff must suffer and prove damages to be successful on a fraud . . . claim." (citing *Casey*, 50 So. 2d at 124)). "Thus, to prevail in an action for fraud, a plaintiff must prove its actual loss or injury from acting in reliance on the false representation." *Morgan Stanley*, 955 So. 2d at 1132.

Defendant's argument is rooted in the premise that Plaintiff "never paid the disputed charges or made any mortgage payments regardless of the forbearance plan length." (Doc. 49 at 24). Plaintiff argues that being obligated to pay for the inspection fees, even if he had not yet paid them, is enough to show actual damages. The problem with Defendant's argument is that it has not shown, based on the allegations in the SAC, that Plaintiff would not have been obligated to pay the debt incurred from the inspection fees. At this stage, this is enough to plead actual damages. *See*

*Laney v. Am. Equity Inv. Life Ins. Co.*, 243 F. Supp. 2d 1347, 1354 (M.D. Fla. 2003) (discussing the two measures of damages for a fraud claim, out-of-pocket damages and benefit-of-the-bargain damages) (citing Florida law). The constructive fraud claim will not be dismissed on this basis at this time.

c.      Independent Tort Doctrine

Finally, Defendant argues that the independent tort doctrine bars any constructive fraud claim because there is a contract that governs the parties' relationship. The independent tort doctrines states that "[w]here damages sought in tort are the same as those for breach of contract a plaintiff may not circumvent the contractual relationship by bringing an action in tort." *Merch. One, Inc. v. TLO, Inc.*, No. 19-cv-23719, 2020 U.S. Dist. LEXIS 7462, at *11 (S.D. Fla. Jan. 16, 2020) (quoting *Ginsberg v. Lennar Fla. Holdings, Inc.*, 645 So. 2d 490, 494 (Fla. 3d DCA 1994)). However, "the rule has not eliminated causes of action based upon torts independent of the contractual breach." *De Sterling v. Bank of Am., N.A.*, No. 09-21490-CIV, 2009 U.S. Dist. LEXIS 103923, at *7 (S.D. Fla. Nov. 5, 2009) (citing *HTP, Ltd. v. Lineas Aeras Coctarricenses, S.A.*, 685 So. 2d 1238, 1239 (Fla. 1996)).

The Court need not decide at this stage whether the independent tort doctrine applies here because "the Federal Rules of Civil Procedure permit alternative pleading." *Wiand v. Catholic Charities*, No. 8:10-cv-247-T-17MAP, 2011 U.S. Dist. LEXIS 109303, at *11 (M.D. Fla. July 11, 2011) (citing Fed. R. Civ. P. 8(a)(3),

8(d)(2), 8(d)(3)). Therefore, the constructive fraud claim will not be dismissed at this time.

### IV.   CONCLUSION

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendant's Motion to Dismiss (Doc. 49) is **GRANTED in part** and **DENIED in part**.

   a. Count IV is **DISMISSED**.

   b. The Motion is otherwise **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida on September 30, 2021.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record